# Keystone Bridge Company, Appt., v. City of Pittsburgh et al.

The acts of March 7, 1846, and of January 4, 1859, were both designed to impose a tax on business and, being *in pari materia*, should be read together.

To tax a merchant upon his stock and also upon his gross sales is not unconstitutional.

Article IX, §§ 1, 2, of the present Constitution does not repeal existing laws providing for the assessment and collection of taxes.

The acts of 1846, 1858, and 1867 empowered the city of Pittsburgh to collect a tax upon all goods, wares, and merchandise sold in said city; and such acts were not repealed by the new Constitution nor by subsequent legislation.

(Argued November 16, 1886. Decided January 3, 1887.)

October Term, 1886, No. 257, W. D., before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Common Pleas No. 1 of Allegheny County overruling exceptions to a master's report and dismissing a bill

Cited in Com. *ex rel.* Hendrickson v. Middletown, 3 Pa. Dist. R. 639, holding that two statutes, being *in pari materia*, must be construed together.

in equity to restrain the collection of a tax levied under the act of March 7, 1846 (P. L. 78).   Affirmed.

The facts and questions raised appear from the following report by the master, George C. Wilson, Esq.:

"There is little, if any, dispute as to the facts in this case.

"The Keystone Bridge Company, at the time of the filing of the present bill, was and is now a corporation created under the laws of Pennsylvania, engaged in the business of manufacturing bridges, iron roofs, etc., in the city of Pittsburgh and selling said manufactured product.

"By an ordinance passed by the councils of the city of Pittsburgh, entitled 'An Ordinance Levying Taxes, Assessing Water Rents, and Making Appropriations for the Fiscal Year, Beginning February 1, 1885,' it was ordained and enacted as follows:   Section 1.   'That for the purpose of providing sufficient revenue to meet the ordinary expenses of the city, to pay the interest on outstanding bonds, and to discharge all other liabilities now due or which may become payable during said year 1885, taxes shall be and are hereby levied and assessed upon all property and other objects of taxation as follows:   .   .   . Upon all goods, wares and merchandise, and upon all articles of trade and commerce sold in said city in any manner, and upon the gross receipts accruing from the hire or use of any personal property in said city not herein otherwise provided for, one mill upon each dollar of sales or hire.'

"And § 2 provides that the board of assessors shall assess said taxes, and the city treasurer shall have no power to divide any items of tax as reported by the assessor.

"Samuel M. Clark, chief clerk in the office of the board of assessors in the city of Pittsburgh, was called as a witness and testified as to the manner in which these assessments are made. That a blank is left with every person, firm, and corporation doing business in the city of Pittsburgh, for the purpose of having such person, firm, and corporation, fill it up, probate, and return it to the board of assessors.   When returns are made by said persons, firms, or corporations, the board of assessors generally accepts the same and they are entered in a book known as the assessment blotter.   If, upon examination of this book, it is discovered that any parties, deemed by the board of assessors to be liable, have failed to make returns, the board itself makes re-

turns for all such delinquents, basing its estimates as nearly as it can upon the business done by such parties.

"In the blank referred to is a notice to the effect that any person, firm, corporation, or agency, which shall feel aggrieved by the amount of any assessment made in pursuance thereof, may appeal therefrom to the finance committee, and prescribing how and when such appeals may be taken. And this blank also contains a notice that in all cases of neglect to file the return required, within ten days, the board of assessors will assess the amount of business.

"The Keystone Bridge Company, the testimony shows, made no return for 1884. The board of assessors in the absence of a return by said company made its own assessment, from which an appeal was taken by the said bridge company to the finance committee; whereupon, an exoneration was granted it for the difference between the amount fixed in the assessment of the board and that set forth or shown in the affidavit of the company's officer before the finance committee.

"Due notice was served upon the Keystone Bridge Company to make a return of its business for the year 1885; and the testimony shows that the company made a return, but afterwards withdrew it and sent, instead, a letter protesting against the constitutionality of the tax. The board of assessors thereupon made its own estimate of the business done by the Keystone Bridge Company, for the year 1885 and fixed the same at $1,-400,000—the said sum being estimated by the said board of assessors to be the gross amount of sales or the gross amount of business done in the city of Pittsburgh by the Keystone Bridge Company for the year 1885. From this estimate no appeal was taken by the said bridge company, but on the 25th of July, 1885, this bill was filed.

"As to the regularity of the present proceeding no question is raised. By an act of the legislature, approved March 7, 1846 (P. L. 78) entitled 'An Act Relative to the Assessment and Collection of Taxes in the City of Pittsburgh,' the councils of said city were authorized 'to levy and assess upon all goods, wares, and merchandise, and upon all articles of trade and commerce sold in the said city, including sales at auction or otherwise, an annual tax not exceeding five mills on the dollar, for the use of said city, to be levied and collected from the vendors of said articles in the same manner as other city taxes are now levied

and collected; *Provided, however,* That the aggregate amount to be levied on the sales of any individual or firm shall not exceed $100.'

"This proviso was repealed by the act of March 13, 1858 (P. L. 108).

"On the 4th day of January, 1859, an act entitled 'An Act to Enable the City of Pittsburgh to Raise Additional Revenue' was approved, in § 4 of which act councils were 'empowered to levy, assess, and collect for the use of the city an annual business tax not exceeding ⅓ of one mill per dollar on the average quarterly business of all forwarding and commission merchants, brokers, banks, banking institutions, and on the average quarterly receipts of insurance companies, insurance agencies, express companies, and telegraph companies doing business in said city.'

"By § 2 of an act entitled 'An Act Regulating the Assessment of City Taxes in the City of Pittsburgh' (P. L. 1258), approved April 15, 1867, the true meaning and construction of the 4th section of the act of January 4, 1859, above quoted, is declared to be that 'the annual business tax authorized by said section shall be assessed and levied upon the estimated yearly business and yearly receipts of the persons, companies, and institutions liable to said tax.'

"Now, although it seems that the words 'business tax' are used for the first time in the act of 1859, the master is of opinion that said act of 1859 and the act of 1846, above quoted, were both designed to impose a tax upon business and, being *in pari materia,* should be read together. *Re* Keeling's Road, 59 Pa. 358.

" 'The act of 1859 did not repeal the act of 1846.    The legislature after putting a tax upon business by the act of 1846 to the extent of imposing a tax upon all goods, wares, and merchandise sold, followed this with the act of 1859 imposing a tax upon the business done by forwarding and commission merchants, brokers, banks, etc.    Among the methods of taxing business, Judge Cooley, in discussing the subject of 'Taxation on Business,' mentions that 'on the amount of business done.'

" 'To tax a merchant upon his stock as property, and also upon his gross sales, may seem burdensome, but it is not unconstitutional, when not expressly forbidden by the Constitution.    The two taxes are not identical, and though they may operate unjustly in particular cases, they are supposed to be im-

posed because the general result is equal and just.' Cooley, Taxn. p. 384.

"And with this understanding as to the meaning of the laws of 1846 and 1859 the board of assessors seems to have acted, because the blank, heretofore referred to and offered in evidence, tends to show that the said board (in ascertaining a basis for city business tax) required not only returns of all goods, wares, and merchandise sold as provided for in the act of 1846, but also the yearly business done by forwarding and commission merchants, brokers, banks, etc., as set forth in the act of 1859.

"After all the legislation already referred to the case of Shriver v. Pittsburg, 66 Pa. 446, arose. This case was decided by the supreme court on the third day of January, 1871. Samuel P. Shriver & Company were grocery merchants, having their store and doing business in the city of Pittsburgh, and were assessed by the city assessor for the year 1869, upon sales amounting to the sum of $495,000; but of this amount the sum of $75,000 was sold at their store in the city of Pittsburgh, and the balance was sales made through persons employed by defendants who made contracts of sale for them outside of the city of Pittsburgh and state of Pennsylvania, which contracts were forwarded by said agents to the defendants at Pittsburgh, and filled by them from goods and merchandise at their store in said city and shipped to the purchasers by the most direct means of conveyance. The case was heard upon an agreed statement of facts, but the court in passing upon the taxing power of the city at that time under the act of 1846, used the following language:

"'The defendants [Shriver & Company] are domiciled at Pittsburgh, have their home there, their warehouse, in which all their goods are stored and insured, and enjoy the protection and benefits of the city authorities, of the police and fire departments. The legislature, recognizing the advantages of municipal organization to the inhabitants, gave this local taxation to aid in raising the necessary revenue to defray the city expenditure. The assessment is upon all goods sold in said city, to be levied and collected from the venders of said articles. This clearly covers goods in the warehouse of the defendants sold by them and the tax is to be collected from them by the very words of the law, for they are the venders of the articles. There is no other method of reconciling the terms of the act. The defendants are the venders of all the goods

amounting to $495,000, and must pay the tax on that amount.' Shriver v. Pittsburg, 66 Pa. 448.

"If, then, under the law as it then existed in 1871, grocers, who like manufacturers are not mentioned in the act of 1859, were liable for the tax upon all goods, wares, and merchandise thus sold, this plaintiff, if at the time engaged in manufacturing and selling bridges, iron roofs, etc., in the city of Pittsburgh, it would seem to me, was also liable for the tax upon all goods, wares, and merchandise similarly sold by it. Thus the law stood at the time of the adoption of the new Constitution.

"Against the power of the city of Pittsburgh, however, to levy and collect this tax for the period covered in the bill filed, plaintiff's counsel specially urge that portion of article 9, § 1, of the Constitution of Pennsylvania, which provides that 'All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.'

"But it may well be replied that the acts of March 7, 1846, March 13, 1858 and April 15, 1867, under which this tax is sought to be imposed, were not *per se* repealed by the present Constitution. To this effect has the court held in several cases.

"The case of Lehigh Iron Co. v. Lower Macungie Twp. 81 Pa. 484, was an action of assumpsit brought after the adoption of the new Constitution for the recovery, under the act of April 14, 1868, of a cent and a half a ton, as an additional road tax for a certain number of tons of ore mined and carried away with teams over the public roads in said township. The defendant in the court below (the Lehigh Iron Company) contended that by reason of the adoption of the Constitution of 1873 all local and special laws were repealed. The supreme court in deciding the case says:

" 'It is contended that this section [speaking of § 1, art. 9] is a repeal *per se* of the act under which this tax is sought to be levied and collected. . . . Upon all the consideration we can give to this subject, after a very careful argument to assist us, we are of opinion that § 1 of article 9 is not immediately operative, but was intended by the convention to be mandatory upon the legislature to enact laws framed upon its special intent, and to repeal all laws inconsistent therewith, leaving the legislature, in the exercise of a sound and wise discretion, to time the repeal after proper general laws shall have been passed. Any other interpretation would lead to most ruinous results. So

much may be deduced from a comprehensive view of the section itself and its consequences in the absence of any language in it to evidence an intent to make it a repeal *per se.*    But beyond this there is strong evidence in the immediate context that the convention had a different intention.    A part of § 1 is the declaration by way of exception to its generality of the power of the assembly to exempt certain classes of property from taxation. This is followed immediately by § 2, which provides that "all laws exempting property from taxation other than the property above enumerated shall be void."    Thus the subject of repeal was directly before the mind of the convention and was limited to laws relating to exemption only.    The subject of the 2d section being directly connected with the subject of the first, indeed, might have been incorporated with it, and this subject being that of repeal it is conclusive evidence to our minds that the convention did not intend to repeal special tax laws, but to let them stand until the legislature had enacted a proper general system of taxation to take their places.'

" 'Art. 9, §§ 1 and 2 of the present Constitution did not execute themselves so as to repeal any existing laws providing for the assessment and collection of taxes; they merely imposed restrictions on future legislation, when it should be enacted.' Coatesville Gas Co. v. Chester County, 97 Pa. 476.

"To the same effect are Kitty Roup's Case, 81* Pa. 211; Germania L. Ins. Co. v. Com. 85 Pa. 518, and Com. v. Martin, 107 Pa. 197.

"If then it be assumed, which in view of the authority of Shriver v. Pittsburg, 66 Pa. 446, it safely may, that under the law the said city had power prior to the adoption of the new Constitution to levy and collect a tax 'upon all goods, wares and merchandise sold,' etc., this power continued after its adoption unless it were taken away by subsequent legislation.

" 'The Constitution which went into effect in January, 1874, does not name the specific articles or kinds of property subject to taxation.    It wisely left that to sound legislative discretion. There is nothing therein indicating an intention to prohibit the imposition of taxes on any species of property previously subjected thereto.'    Brown's Appeal, 111 Pa. 72, 2 Atl. 419.

"Has there then been any repeal of the acts of 1846, 1858, 1867, by legislation since the adoption of the new Constitution?

"It is contended by counsel for the plaintiff that by an act

of assembly approved March 22, 1877, entitled 'An Act in Relation to Cities of the Second Class and Providing for the Levy and Collection and Disbursement of Taxes and Water Rents,' all taxes for city purposes are confined to estates, real and personal.

"Section 2 of said act provides as follows: 'The finance committee of the councils of the cities of the class aforesaid shall be and are hereby directed, in lieu of any existing authority in relation thereto, to make and agree upon an estimate of the various sums of money which in their discretion will be required to defray all the various expenses necessary for conducting the various departments whether legislative, executive, or administrative (including schools or boards of education or poor boards) of the city government, which estimate shall be founded upon reports obtained from said departments, and also for paying the interest upon the city debt and the principal of such debt falling due, which amounts when so established by said committee shall be certified by them on or before the second Monday of January, in each year, in detail to the city councils, to be by them accepted or modified as the aggregate expenses of the city; and said councils are hereby empowered and directed annually to cause a tax sufficient for all purposes to be levied and collected of the estates, real and personal, subject to taxation within such cities.'

"Prior to the act of 1877 it appears (*vide* acts of assembly, March 6, 1847, April 9, 1849, and February 9, 1855) that all estimates of the various sums of money necessary to carry on the affairs of the city government were not made by one body, but by different ones, for example: the central board of education exercised taxing powers; so did each school district; so did the guardians of the poor. The act of 1877 was passed centralizing the duty of making estimates in a single body, to wit, the finance committee. But that it was the intention of the legislature in this act to preserve the 'business tax,' by which the master is of opinion was meant the taxes referred to above provided for in the act of 1846, as well as those provided for in the act of 1859, is manifest from reading § 8, wherein it is made the duty of the city treasurer to prepare a registry or list of all delinquents in business tax or water rents, and place the same in the hands of the collector of delinquent taxes for collection on or before the 15th day of July of each

year. Can it be said that the taxes provided for in act of 1859 are taxes upon real or personal estates any more than the taxes provided for in the act of 1846?

"The intention of the legislature to preserve the 'business tax' is to be seen again in the act of May 22, 1878 (P. L. 87). And besides, if reference be had to the act of 1846 (and the ordinance of 1885 in so far as it relates to a tax upon goods, wares, and merchandise sold, is in the language of the act of 1846) it will be observed that while this tax is to be collected from the venders of said articles, it is principally a tax upon goods, wares, and merchandise sold. For the reasons given, the master is of opinion that the acts of 1846, 1858, and 1867, by virtue of which the city of Pittsburgh had power to levy and collect a tax upon all goods, wares, and merchandise sold in said city, were not repealed by the act of March 22, 1877.

"Plaintiff's counsel further direct the attention of the master to § 1 of an act of assembly, entitled 'A Supplement to an Act, entitled "An Act in Relation to Cities of the Second Class, Providing for the Levy, Collection, and Disbursement of Taxes and Water Rents,"' approved March 15, 1878 (P. L. 7), which in § 1 provides as follows: 'That the city councils of cities of the second class shall levy in each district where an indebtedness existed prior to the passage of an act, entitled "An Act in Relation to Cities of the Second Class, Providing for the Levy, Collection, and Disbursement of Taxes and Water Rents," approved the twenty-second day of March, 1877, a tax sufficient to pay the interest thereon and to provide for the ultimate payment of the principal of said indebtedness; and said tax shall be specially levied upon the taxable property of said district liable to taxation for such purposes.'

"It is insisted that this act limits the tax for the payment of the interest and principal of the city debt to a special levy upon the taxable property, so that even if there were any authority for imposing a tax upon the goods, wares, and merchandise of the Keystone Bridge Company sold in the city of Pittsburgh during the year 1885, the levy in the ordinance for said year being 'for the purpose of providing sufficient revenue to meet the ordinary expenses of the city, to pay the interest on outstanding bonds, and to discharge all other liabilities now due or which may become payable during said year, 1885,' is general and therefore in violation of § 1 of the act of 1878.

"This section (§ 1 of the act of 1878) seems to the master to have intended to make provision for the levy and collection of a tax to pay the indebtedness of the several districts composing cities of the second class; *i. e.,* such indebtedness as may have existed prior to the passage of the act of March 22, 1877.

"Aside from the appropriation ordinance for 1885—admitted in evidence and filed with this report—no testimony was offered in relation to any indebtedness on the part of any district in the city of Pittsburgh, such indebtedness as is contemplated by the act of 1878. The ordinance itself, however, indicates that at the date of its passage there was some such indebtedness; and the master is of opinion that the ordinance in providing for the levy and collection of a tax to pay said indebtedness conforms to the requirements of § 1 of the act of 1878; *e. g.* on page 1, line 12 of said ordinance, is the following:

" 'Old City special tax upon all property taxable for state or county purposes, within the limits of the city of Pittsburgh as it existed prior to the consolidation under the act of April, 1867, 8-10 mill upon each dollar of valuation as a special tax for the separate indebtedness of said district.'

"On the same page, line 16: 'South Side special tax. Upon all property taxable for state or county purposes within the limits of the borough of East Birmingham, 3 mills; Mt. Washington, 6-10 mills; Temperanceville, 3½ mills and 4½ mills, to pay annual instalments on bonds issued since consolidation for grading and paving Main street in said borough.'

"Again, in § 4 of said ordinance: 'That the amount necessary to pay the interest on the separate indebtedness of the Old City and South Side boroughs shall be taken from the receipts from the special taxes of the districts aforesaid and placed in appropriation No. 1, on which warrants shall be drawn for all interest accruing or accrued on the debts of said districts respectively.'

"And in § 5: 'That the balance of said receipts from said special taxes (after payment of interest) shall be paid into a sinking fund for the district from which it is collected and shall be used for the payment of the special debt of said district.'

"And on page 8 of said ordinance, among the estimated expenditures for 1885, under the head of 'Old City and South Side

Separate Indebtedness,' are given the figures upon which the foregoing levies are based, *viz.* :

| | | |
|---|---:|---:|
| Old City special tax debt and interest | $42,480 | 00 |
| Borough of East Birmingham, debt, interest, and sinking fund | 13,845 | 00 |
| Borough of Mt. Washington, debt, interest, and sinking fund | 561 | 66 |
| Borough of Temperanceville, instalment and | 2,862 | 00 |
| Main street bonds | 3,680 | 00 |

"But if the levy made in the ordinance for 1885 for the payment of the indebtedness and interest mentioned in the act of 1878 were not a special levy the master does not see how that could well be urged by plaintiff against the payment by it of the tax levied upon its goods, wares, and merchandise sold. There is no contention that the levy made upon the goods, wares, and merchandise sold by plaintiff has been made in any other manner than as directed in the law under which said tax is sought to be imposed.

"The master being of opinion, therefore, that the acts of 1846, 1858, and 1867 empowered the city of Pittsburgh to levy and collect a tax upon all goods, wares, and merchandise, and upon all articles of trade and commerce sold in said city, is also of opinion that said acts were not repealed by the adoption of the new Constitution, and that no intention to repeal said acts has been expressed by the legislature since the adoption of the said Constitution of 1874.

"It has been insisted that the tax sought to be imposed upon the plaintiff for the period covered by the present bill is an occupation tax and falls within the condemnation of Banger's Appeal, 16 W. N. C. 289.

"I do not think so. That was a case in which a tax in direct violation of the Constitution was sought to be imposed under an act of assembly passed subsequent to the adoption of the new Constitution. 'It was,' says the supreme court in Brown's Appeal, 111 Pa. 72, 2 Atl. 77, 'an attempt to impose an income tax under an invalid city ordinance, taxing occupations.'

"The master is of opinion, however, that the tax in the present bill complained of is not contrary to the provisions of article 9, § 1, of the Constitution, requiring 'all taxes to be uniform upon the same class of subjects within the territorial limits of the

authority levying the tax.' The tax is for one entire class of subjects; the millage is uniform and applies to the whole city of Pittsburgh. But even if it were not, the case of the Lehigh Iron Co. v. Lower Macungie Twp. 81 Pa. 484, and the other cases in the same connection cited show that article 9, § 1 of the present Constitution, did not execute itself so as to repeal any existing laws providing for the assessment and collection of taxes.

"Upon the whole case the master is of opinion that the plaintiff has shown no ground for relief as prayed in the bill, and he accordingly recommends that it be dismissed with costs.

Complainant filed the following exceptions to the master's report:

1. The master erred in finding that the act of assembly, approved March 22, 1877, did not repeal the act of March 7, 1846, entitled "An Act Relative to Assessment of Taxes in the City of Pittsburgh."

2. In not finding that the said act of 1877 was a general law for the levy and collection of all taxes for cities of the second class, and therefore operated as a repeal of all prior special legislation for the city of Pittsburgh relating to the levy and collection of taxes.

3. In finding that the business tax provided for by the act approved the 4th day of January, 1859, providing for an annual business tax, was to be so construed as to cover the taxes provided for by the act of 1846 above referred to.

4. In finding that the reference to business tax in the 8th section of the act of 1877, *supra,* preserved from repeal the tax authorized to be levied by the act of 1846.

5. In not finding that the reference to business tax in § 8 of the said act of 1887 applied specifically to the business tax created by the act of 1859, *supra.*

6. In deciding that the tax complained of in the bill is not an occupation tax.

7. In deciding that the said tax complained of in the bill is not contrary to the provision of article 9, § 1, of the Constitution.

8. In finding that the tax complained of is for one entire class of subjects and that the millage was uniform and applicable to the whole city of Pittsburgh.

9. In not finding that the tax complained of was neither a tax upon real or personal estate, that it was a tax upon income; that it was unequal and applicable only to the particular persons and corporations engaged in the business of selling goods, wares, and merchandise.

10. In deciding that the plaintiff has shown no ground for relief as prayed for in the bill.

11. In deciding that the bill be dismissed with costs.

12. In not finding that the relief prayed for by the plaintiff should be granted, and that the costs should be borne by the defendant.

After hearing in the court below a decree was entered, overruling the exceptions and dismissing the bill, whereupon complainant appealed, assigning as error the action of the court in overruling the exceptions and entering such decree.

*S. Schoyer, Jr.,* and *Knox & Reed,* for appellant.—We concede the power of the city, under the act of 1846, to levy and collect the tax, unless it shall be found that this act has been repealed, or that the power of the city in this respect has been limited and restricted by the provisions of art. 9, § 1, of the Constitution of 1873.

The act of March 7, 1846, was repealed by the act of March 22, 1877 (P. L. 16), entitled "An Act in Relation to Cities of the Second Class, Providing for the Levy, Collection, and Disbursement of Taxes and Water Rents," which provided for the city of Pittsburgh a complete system for the levy and collection of all taxes necessary for every municipal purpose.

The legislature, in passing this act of 1877, carried out the provision of the Constitution of 1873, art. 9, § 1, that all taxes should be levied and collected under general laws. Lehigh Iron Co. v. Lower Macungie Twp. 81 Pa. 485.

A subsequent statute revising the whole subject-matter of a former one and evidently intended as a substitute for it, although it contains no express words to that effect, must, in the principles of law, as well as in reason and common sense, operate to repeal the former. Johnston's Estate, 33 Pa. 511; Rhoads v. Hoernerstown Bldg. & Sav. Asso. 82 Pa. 187.

Especially where, as in this case, the assessment authorized by the prior act (1846) is contrary to the provisions of article 9, § 1, of the Constitution, that all taxes shall be uniform upon the

same class of subjects within the territorial limits of the authority imposing the tax.

The power of the city to assess the tax complained of in this case by the appellant, has been taken away by article 9, § 1, of the Constitution of 1874.

The city councils, acting under the authority conferred upon them by the act of 1877, proceeded to enact the ordinance of March 2, 1885.

The assessment is made or estimated upon the gross amount of business done and to be done in the year 1885, or the gross amount of sales for that year, or the gross amount of receipts for that year.

We submit that this mode of taxation is illegal for two reasons: It is not authorized by the act of 1877; it is contrary to the requirements of article 9, § 1 of the Constitution, and is not a uniform tax.

The act of 1877 confers only the power to levy and collect the tax upon real and personal estates subject to taxation within such cities.

Gross receipts are not real or personal estate.

A tax upon the gross amount of sales of merchandise is not a tax upon the goods themselves or the fruits of sale, but upon the business or act of selling. Lott v. Ross, 38 Ala. 159.

If, therefore, this is not a tax upon the goods themselves, but a tax upon the act of selling and the income derived therefrom, it cannot be said to be a tax upon real or personal estate, and there is no authority for the assessment of this tax by the city councils. Banger's Appeal, 16 W. N. C. 289.

*Thos. D. Carnahan* and *W. C. Moreland,* for appellees.—The act of March 7, 1846, is not unconstitutional. Shriver v. Pittsburg, 66 Pa. 446; Iron City Bank v. Pittsburgh, 37 Pa. 340; Pennsylvania R. Co. v. Pittsburgh, 104 Pa. 522.

The acts of 1846 and 1859 in no manner conflict with that of 1877, and therefore do not come within the provision in § 16 of the latter. Sec. 16. "All acts or parts of acts conflicting with this act be and the same are hereby repealed, so far as they conflict with this act."

The entire scope of the act of 1877 shows that there was no purpose upon the part of the legislature to repeal or in any manner modify the previous acts, but simply to create one body,

clothed with power to make estimates, and fix the rate of taxation, and to provide what had never before existed, an officer to enforce the payment of delinquent taxes.

In the absence of repealing legislation, § 1 of article 9 of the Constitution is inapplicable to the city of Pittsburgh. Lehigh Iron Co. v. Lower Macungie Twp. 81 Pa. 482; Com. v. Martin, 107 Pa. 197; Coatesville Gas Co. v. Chester County, 97 Pa. 476; Indiana County v. Agricultural Soc. 85 Pa. 357.

PER CURIAM:

Having examined the report of the master in this case with some care, we agree with the court below in the approval of it, regarding it as a sound exposition of the law governing the assessment of which the plaintiff complains.

Decree affirmed and appeal dismissed, at the costs of the appellant.